UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Michael J. Gill

    v.                                      Civil No. 03-cv-155-JD
                                              Opinion No. 2005 DNH 110
Gulfstream Park Racing
Association, Inc., and Scott Savin


O R D E R

Michael J. Gill owns thoroughbred race horses and has enjoyed enviable success at Gulfstream Park in Florida. In January of 2003, the Thoroughbred Racing Protective Bureau ("TRPB") initiated an investigation of Gill and his trainer, Mark Shuman, which led to a report prepared by Anthony Otero of the TRPB, based on tips from confidential sources that Gill's horses were receiving improper or illegal treatments and medications while racing at Gulfstream Park. Gill brings claims of invasion of privacy, defamation, and tortious interference with business relations against Gulfstream Park Racing Association, Inc., and Scott Savin, President and General Manager of Gulfstream Park, arising from publication of the TRPB report prepared by Otero. In the course of discovery, counsel representing the TRPB and Otero inadvertently disclosed to Gill's counsel confidential documents that included the identities of the confidential

informants.[1]  Those documents remain filed under seal with the court.

Gill moved to unseal the documents, and the TRPB and Otero sought a protective order to keep the documents and all of the information in the documents, including the informants' identities, confidential.  The court ruled that the informant's privilege did not apply and granted Gill's motion to unseal the documents, denying the motion for a protective order.  On appeal, the First Circuit ruled that while the informant's privilege does not protect the information in the sealed documents, Federal Rule of Civil Procedure 26(c) "is highly flexible" and "requires an individualized balancing of the many interests that may be present in a particular case."  Gill, 399 F.3d at 402 (internal quotation marks omitted).  The case was remanded for proceedings consistent with that opinion.  The parties along with Otero and TRPB agreed on a briefing schedule to address the issue of protection under Rule 26(c) and have now filed their papers.

---

[1]"Gill's then-counsel revealed the informants' names to his client, filed the documents containing the names under seal with the district court, and withdrew from the case."  Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 393 (1st cir. 2005).

## Discussion

Rule 26(c) provides that "[u]pon motion by a party or by the person from whom discovery is sought, . . . for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." The First Circuit has interpreted Rule 26(c) to require the court to balance the particular interests in the case in determining whether good cause exists to support a protective order.[2] Gill, 399 F.3d at 402. The interests to be balanced include "considerations of the public interest, the need for confidentiality, and privacy interests." Id. Therefore, the court must balance Gill's interests in obtaining the information in the sealed documents against the interests of the defendants, Savin and Gulfstream; the non-party participants in this controversy, Otero and TRPB; and the confidential informants, in protecting the information from disclosure. The court must also weigh the public's interest in disclosure versus its interest in preserving the confidentiality of the information.

---

[2]A party seeking information in discovery over an objection bears the initial burden of showing its relevance. Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005). A party seeking a protective order bears the burden of showing good cause under Rule 26(c). Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988).

A.  Gill's Interests in Disclosure

This court previously found, in the context of determining whether the informant's privilege applied in the circumstances of this case, that Gill has an interest in disclosure of the identities of the informants because they were likely to have information that would be relevant to his defamation claim against Gulfstream.³ The First Circuit noted, however, that Otero and TRPB contend they were not agents of Gulfstream, which would undermine the weight of that interest. Gill, 399 F.3d at 402. On remand, Gill asserts that disclosure is necessary because his defamation claim against Gulfstream arises from statements made by the informants to the TRPB which led to

---

³Under New Hampshire law, "[a non-public figure] plaintiff proves defamation by showing that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, assuming no valid privilege applies to the communication." Pierson v. Hubbard, 147 N.H. 760, 763 (2002). Presumed damages arising from defamatory statements are available when the action is brought by a private individual involving a matter of public concern only upon a "'showing of knowledge of falsity or reckless disregard for the truth.'" Touma v. St. Mary's Bank, 142 N.H. 762, 766 (1998) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974)). Gill alleges that "[t]he [TRPB] Investigative Report has published knowledge [sic] that the allegations continued [sic] therein were false or with reckless disregard of whether the allegations were false [sic]" and seeks both actual and presumed damages. Am. Comp. ¶ 60 & ¶ 62. It appears, therefore, that Gill bases his claim at least in part on a theory that the alleged defamation involved a matter of public concern.

Otero's investigation and report.[4]  He concedes, however, that he has not alleged claims against the informants, TRPB, or Otero and that he has not alleged that the informants were agents or employees of Gulfstream.  In essence, the interest Gill asserts is that the confidential information in the sealed documents may provide a basis for bringing claims against other defendants.  He describes his interest as his constitutional right to seek redress for injuries he has sustained due to the publication of the report.

B.  <u>Interests of TRPB, Otero, Informants, and Public</u>

On appeal, the TRPB and Otero asserted interests "shared by the public, in protecting the integrity of racing and, as well,

---

[4]Gill also argues that the information in the sealed documents is "material" based on the affidavit of his former counsel, Attorney Alexander J. Walker, Jr., who was the recipient of the inadvertently disclosed confidential documents.  Walker states in his affidavit that "even based on my cursory review of the materials before discovering that they had, in fact, been inadvertently sent to me, the identities of the so-called tipsters as well as the nature of their complaints against Mr. Gill are material to Mr. Gill's response to the defendants' Motion for Summary Judgment.  In addition, the information is, in my view, material to potential claims against additional parties in either this pending action or a separate action."  Pl. Ex. 3 at 2.  The lack of specificity as to how the information would have been material to oppose summary judgment deprives Walker's opinion of any substantial weight, and the motion for summary judgment is no longer pending, although the same issues may arise again in this case.

the privacy interests of the informants." Gill, 399 F.3d at 403. The TRPB and Otero provide further support for those interests in their memoranda filed here. In particular, the TRPB and Otero assert that the TRPB relies on confidential sources to conduct meaningful investigations of horse racing and that the integrity of racing is integral to that industry, which is largely dependent on wagering.[5] Without public confidence in the integrity of the competition and in the humane treatment of the horses, they maintain, the public would not support racing or risk its money in wagering on races.

C. <u>Balancing the Interests</u>

The TRPB argues that the confidential documents are not relevant to Gill's case, in its present form, because Otero and the TRPB are not parties and are not agents of Gulfstream or Savin. Gulfstream and Savin also charge that Gill has failed to diligently seek the identities of the informants from other available sources and suggest that information about the relationship of the informants to Gulfstream and even their identities has been available from Gulfstream, other Gulfstream

---

[5] The TRPB is a private regulatory agency within the horse racing industry that works closely with governmental agencies and commissions, including the Florida Division of Pari-Mutuel Wagering. Gill, 399 F.3d at 402.

employees, or the Florida Division of Pari-Mutuel Wagering.  Gill has not responded to the charge that he has not been diligent in seeking this information from other sources.

To overcome the question of the relevance of the confidential information to his present case, Gill states that once the information in the sealed documents is disclosed, he will amend his complaint to add new claims and parties, based on that information.[6]  The TRPB and Otero contend that Gill's interest must be based on the relevance of the information to his present case, which they contend is limited or nonexistent.

Discovery is available to obtain any non-privileged matter "that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(1).  In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter

---

[6]Gill's reliance on Federal Rule of Civil Procedure 15(b) as a vehicle to allow him to assert an interest based on claims that are not alleged in his complaint is misplaced.  Rule 15(b), by its terms, applies to issues that are not alleged in the complaint but are "tried by express or implied consent of the parties."  (Emphasis added.)  That occurs when "'during the trial, a party acquiesces in the introduction of evidence which is relevant only to that issue.'"  Mauser v. Raytheon Co. Pension Plan, 239 F.3d 51, 58 (1st Cir. 2001) (internal quotation marks omitted); DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917 (1st Cir. 1992).  This case has not yet been tried, and the defendants have not expressly nor impliedly consented to trial of claims or issues not pled in the complaint. Further, new claims against new parties would not be encompassed by Rule 15(b).

involved in the action." Id.  The advisory committee notes to the 2000 amendment of Rule 26(b)(1) explain that concern had arisen about the scope of discovery under the broad "subject matter" language and that the Committee decided not to eliminate that language but to limit its application by requiring more management of discovery by the court.  See Sallis v. Univ. of Minn., 408 F.3d 470, 477 (8th Cir. 2005).  Therefore, when an objection arises as to the relevance of discovery, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it, so long as it is relevant to the subject matter of the action."  Fed. R. Civ. P. 26(b)(1) 2000 advisory committee note; see also 6 James Wm. Moore et al., Moore's Federal Practice § 26.41[3][a] (3d ed. 2005).  However, "[t]he Committee intends that the parties and the court focus on the actual claims and defenses involved."  Fed. R. Civ. P. 26(b)(1) 2000 advisory committee note; see also Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 968 (9th Cir. 2004).

For purposes of this case, the court will assume that the confidential information is relevant, in part, because it would augment Gill's defamation claim against the present defendants. In addition, it appears that the information may be relevant to defenses the present defendants would raise to the defamation

claim.  Further, despite some uncertainty as to whether Gill has made the necessary showing of good cause for discovery pertaining to matters beyond the scope of the present claims and defenses, the confidential information is likely relevant to the subject matter of the defamation claim, because that information is about the tips given to Otero that were the basis for the TRPB report.[7] Therefore, Gill has a relevant interest in the confidential information either as it pertains to his present defamation claim or to the subject matter of that claim.

The TRPB presents a compelling argument, with support from the amicus brief submitted on appeal by the Association of Racing Commissioners International, that meaningful investigation of the participants in thoroughbred racing is necessary to maintain the health and integrity of the sport and that confidential informants are integral to the investigative process.  The Association explains that the public will not participate in wagering on horse races if the fairness of the competition is in question and that the public expects the horses to be treated properly.  In addition, the Association states that the use of certain substances to enhance horses' performance is difficult to

---

[7]Gill and his former counsel have represented that if that information were disclosed, it would render claims against the present defendants moot and would provide a factual basis for claims against new defendants.

detect without the assistance of confidential informants.

Paul Berube, President of the TRPB, states that the TRPB is the "self-regulatory arm of thoroughbred horse-racing in the United States and Canada." Berube Aff. § 2.  As such, its primary purpose is to investigate all aspects of the sport to detect and prevent a wide variety of illegal practices and activities.  In the course of its investigations, TRPB agents take notes and create memoranda that include sensitive and confidential information and the agents' conclusions based on the information gathered.  Information from confidential sources is vital to TRPB agents' investigations, and those sources cooperate with agents based on their understanding that their identities will be kept confidential.  Berube asserts that "[d]isclosure of the TRPB's confidential investigatory files would impair its effectiveness as an investigatory agency and, thus, would be contrary to the public interest in protecting the integrity of the parimutuel horse-racing industry."  Berube Aff. ¶ 6.

Therefore, the court must balance the interest Gill asserts, which he supports by references to the New Hampshire Constitution and Shakespeare's Othello, in information that would assist him in redressing his injuries caused by publication of the TRPB Investigative Report against the interests of the TRPB, Otero, the informants, and the public.  The TRPB and Otero persuasively

argue that protecting the confidentiality of the information is necessary to the TRPB's purpose of preserving the integrity of the horse racing industry and that the public interest is aligned, in this case, with the TRPB.  Although the issue is not well developed, it also appears that the informants' interests are served by not publicly disclosing their identities.  Therefore, in balance, the interests of the TRPB, Otero, the informants, and the public in protecting the confidentiality of the information outweigh Gill's interest in disclosing that information.

The TRPB and Otero have carried their burden of showing good cause for a protective order under Rule 26(c).  For that reason, Gill's motion to unseal the documents must be denied.

## Conclusion

For the foregoing reasons, the plaintiff's motion to unseal (document no. 30) is denied.  The nonparties' motion for a protective order (document no. 42) is granted in part as follows: The documents shall remain under seal with the court until the conclusion of this case.  Gill, his counsel, and his former counsel shall not disclose the identities of the confidential

informants or any other confidential information based on information in the sealed documents.

    SO ORDERED.

                                                     _____
Joseph A. DiClerico, Jr.
United States District Judge

July 21, 2005

cc:   Peter S. Cowan, Esquire
     Wilbur A. Glahn III, Esquire
     Alan R. Hoffman, Esquire
     Jack Kaplan, Esquire
     Arpiar G. Saunders Jr., Esquire